2540

The STATE, Respondent v. Randy BRIGHT, Appellant.

(473 S.E. (2d) 851)

Court of Appeals

*Assistant Appellate Defender M. Anne Pearce,* of the *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorneys General Rakale B. Smith* and *Caroline Callison Tiffin,* all of Columbia; and *Solicitor Joseph J. Watson,* Greenville, *for respondent.*

Heard June 5, 1996.

Decided July 8, 1996; Reh. Den. Aug. 22, 1996.

*Per Curiam:*

Appellant, Randy Bright (Bright), appeals his conviction for criminal conspiracy, second-degree arson, and burning personal property to defraud an insurer. The only issue on appeal

is whether the trial court erred in admitting evidence of two previous fire losses, for which Bright made insurance claims and was paid. We reverse and remand for a new trial.

## I. FACTS

On November 15, 1992, Bright's home was destroyed by fire. At the time the home burned, it was insured for $175,400 and its contents for $131,550. As a result of the fire, Bright received payment from Nationwide Insurance Company in excess of $300,000. Bright was indicted for criminal conspiracy, second-degree arson, and burning personal property to defraud an insurer.

Michael Bright, Bright's 16-year-old son from a former marriage, who was not living with his father at the time of the fire, pled guilty to second-degree arson. He confessed he intentionally started the fire. However, Michael's final sentencing was delayed pending his testimony at his father's trial. At Bright's trial, Michael testified his father asked him to burn the house down so he could collect the insurance proceeds. Bright denied any involvement in the arson. Thus, the central issue at the trial was whether Bright instructed his son to burn down his house.

At Bright's September 1994 trial, the State sought to introduce evidence that Bright had recovered insurance proceeds from two house fires in 1977. Bright's insurer paid both claims. There were no allegations that either fire was of an incendiary nature or that Bright had engaged in any wrongdoing in connection with the fires. Bright objected to the relevance of the proffered evidence and asserted he would suffer undue prejudice from the introduction of such evidence. The trial court ruled the evidence was admissible, and the jury convicted Bright on all three counts. Bright was sentenced to five years imprisonment for conspiracy and burning personal property to defraud an insurer. He was also sentenced to a fifteen-year term of imprisonment for second-degree arson, suspended upon serving ten years, with five years probation.

## II. LAW

It is a fundamental principle of law that a defendant is presumed innocent until the State proves him guilty beyond a reasonable doubt. Furthermore, a defen-

dant's conviction must be based on proof of the offense for which he is accused, rather than prior immoral acts. *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). Accordingly, evidence of other crimes or bad acts, as a general rule, is not admissible to prove the offense for which a defendant is on trial unless the submitted evidence tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to one another that proof of one tends to establish the other; or (5) the identity of the person charged with the commission of the crime on trial. *Id.*

The State concedes that the introduction of evidence of the previous fires could not withstand the *Lyle* test for admission as prior bad acts. It argues, instead, that the evidence was introduced "to show that [Bright] had previously collected insurance proceeds as a result of house fires to prove knowledge and motive on the part of [Bright]." The State argues the fact Bright knew he could easily collect large sums of money as a result of his home being burned reflected on his motive in having his home burned.

In ruling on the admissibility of the questioned evidence, the trial court relied on *Rutledge v. St. Paul Fire and Marine Ins. Co.*, 286 S.C. 360, 334 S.E. (2d) 131 (Ct. App. 1985). In *Rutledge*, the plaintiff sued the insurance company for breach of contract accompanied by a fraudulent act when the insurer refused to pay his claim after his business was destroyed by fire. At trial, the insurer sought to introduce evidence that Rutledge's business had suffered a fire loss approximately one year prior, and that Rutledge had collected insurance proceeds. The trial judge in *Rutledge* found that because the offer of proof contained no evidence the first fire was incendiary in origin, evidence of the first fire could only be considered on the issue of a bad-faith refusal by the insurer to pay insurance benefits. On appeal, this court reversed, stating:

> We recognize some courts have held that in cases involving the burning of property evidence relating to another fire is inadmissible absent a showing the other fire was of an incendiary nature and the insured owner was connected with causing the other fire. (Citations omitted.) Still, we think the better rule is that evidence of another fire and of a settlement arising therefrom is relevant to

the issues of the insured's intent, motive, and knowledge irrespective of whether the other fire was incendiary.

*Id.* at 369, 334 S.E. (2d) at 136-137.

The trial court recognized *Rutledge* is a civil case, but thought it important that this court in *Rutledge* cited four cases, three of which were criminal, to support its proposition that evidence of another fire and of a settlement arising therefrom is relevant to the issues of the insured's intent, motive, and knowledge irrespective of whether the other fire was incendiary. The cases cited in *Rutledge* include *Nasim v. State*, 34 Md. App. 65, 366 A. (2d) 70 (1976); *Terpstra v. Niagara Fire Ins. Co.*, 26 N.Y. (2d) 70, 308 N.Y.S. (2d) 378, 256 N.E. (2d) 536 (1970); *People v. Furgerson*, 209 Cal. App. (2d) 387, 25 Cal. Rptr. 818 (1962); *and State v. McClard*, 81 Or. 510, 160 P. 130 (1916).

We refuse to extend the holding of *Rutledge* to criminal cases. As we see it, the State's argument is simply an innovative way of circumventing the requirements of *Lyle*. Regardless of what may have been the intention of the prosecutor in introducing evidence of the previous fires, the obvious inference to be drawn by the jury from such evidence is that the fires were not accidental and Bright was connected with them. We can discern no other rational reason why the prosecution would wish to associate Bright with the prior fires.

When an accused takes the witness stand, he becomes subject to impeachment, like any other witness. Regardless of whether the accused offers evidence of his good character, he may be cross-examined about "past transactions tending to affect his credibility." *State v. Major*, 301 S.C. 181, 183, 391 S.E. (2d) 235, 237 (1990). Notwithstanding, the law is clear that only relevant evidence is admissible in a criminal case. *State v. Petit*, 144 S.C. 452, 142 S.E. 725 (1928). It is equally clear that evidence of prior transactions is admissible only when necessary to prove a fact in issue. *State v. Johnson*, 293 S.C. 321, 360 S.E. (2d) 317 (1987). Showing Bright had an illegal motive to commit the crime in question would be relevant evidence in this case, but showing he had experienced two fires in the past is not relevant to proving he committed the instant crime.[1] *State v. Douglas*, 302 S.C. 508,

---

[1] Under Rule 40t, SCRE, effective 1995, relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of conse-

397 S.E. (2d) 98 (1990). The admission of such evidence has the inevitable tendency to raise a legally spurious presumption or inference of guilt in the minds of the jurors and is inadmissible in a criminal case. *State v. McConnell*, 290 S.C. 278, 350 S.E. (2d) 179 (1986).

Moreover, even if the evidence was admissible, the remoteness of the occurrences and prejudicial nature of the testimony would preclude the introduction of the evidence. Evidence that may otherwise be relevant may lose its probative value when it becomes too far removed from the event in question. *State v. DuBose*, 288 S.C. 226, 341 S.E. (2d) 785 (1986). There is no set rule as to what lapse of time will make particular evidence too remote to be probative. The determination of remoteness is usually a matter of discretion with the trial court whose discretion will not be disturbed absent an abuse of discretion. *State v. Tyner*, 273 S.C. 646, 258 S.E. (2d) 559 (1979). We hold that under the facts of this case, the occurrence of the prior fires is too remote to have any probative value in proving Bright's guilt.

Additionally, relevant evidence may be excluded from the jury if the prejudice resulting from its admission outweighs the probative value of the evidence. *State v. Alexander*, 303 S.C. 377, 401 S.E. (2d) 146 (1991). Unfair prejudice from the introduction of evidence occurs when it had an undue tendency to induce a decision on an improper basis. *State v. Brown*, 306 S.C. 448, 412 S.E. (2d) 440 (Ct. App. 1991). The State's cross-examination of Bright regarding the fires that occurred fifteen years ago, where there is no probative evidence linking him to any wrongdoing in connection with their occurrences, affords great potential for prejudice and should not have been allowed. *See State v. Gore*, 283 S.C. 118, 322 S.E. (2d) 12 (1984). Accordingly, Bright's convictions are reversed and the case is remanded for a new trial.

Reversed and remanded.

CURETON, ANDERSON and STILWELL, JJ., concur.